IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

| | |
|---|---|
| Philip Emiabata, d/b/a Nova Express, ) | |
| ) | Case No. 2:09-cv-84 |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION AND** |
| vs. ) | **ORDER GRANTING DEFENDANT** |
| ) | **C&C TOWING AND TRANSPORT'S** |
| Western Finance & Lease, Inc., and C&C ) | **MOTION TO DISMISS** |
| Towing and Transport, ) | |
| ) | |
| Defendants. ) | |

Before the Court is Defendant C&C Towing and Transport's (hereafter "C&C Towing") motion to dismiss for lack of personal jurisdiction (Doc. #17). Plaintiff Philip Emiabata d/b/a Nova Express (hereafter "Emiabata") filed a brief in opposition (Doc. #21). The Court, having considered the briefs, supporting evidence, and arguments of the parties, now issues this memorandum opinion and order.

## SUMMARY OF DECISION

Defendant C&C Towing's sole contact with North Dakota consisted of advising Western Finance & Lease, a North Dakota business and lien holder of the trailer at issue, as to the whereabouts of the trailer and receiving documentation to finalize the repossession of the trailer in the State of Georgia. The Court finds this contact is insufficient to confer personal jurisdiction over C&C Towing and hereby **GRANTS** C&C Towing's motion to dismiss for lack of personal jurisdiction.

## FACTUAL BACKGROUND

Plaintiff Philip Emiabata resides in Texas (Doc. #1, Complaint ¶ 1). Defendant Western Finance & Lease, Inc. (hereafter "Western Finance") operates a business in Devils Lake, North Dakota (Id. at ¶ 2; Doc. #3, Answer ¶ 4). Defendant C&C Towing is a company doing business in

1

Georgia (Id. at ¶ 2; Doc. #5, Answer ¶ 2; Doc. #19, Aff. Neal Clark, Jr. ¶3).

Emiabata alleges he purchased two semi-trailers from National Semi-Trailer Corporation in Charlotte, North Carolina (Doc. #1, Complaint ¶ 6). He claims he financed the purchase through Defendant Western Finance. Id. Emiabata contends he intended for Nova Express to sign the finance agreement as the primary borrower and Jennifer Graf as the co-signer. Id. According to Emiabata's allegations and documents presented to the Court, it appears Philip Emiabata has no written agreement with Western Finance. Western Finance entered into an agreement for the purchase of the trailers with Jennifer Graf d/b/a Nova Express.

In his Complaint, Emiabata alleges Western Finance violated the Deceptive Practices Act by falsely and fraudulently listing Jennifer Graf as the primary borrower and also the co-signer, and by representing that the finance agreement confers rights to Jennifer Graf as the primary borrower. Id. ¶ 8. Emiabata also alleges Western Finance has refused to cure "the defect" regarding the name of the borrower, has charged "outrageous" late fees, and "illegally" hired C&C Towing to repossess the trailer. Id. at ¶¶ 9-10. In addition, Emiabata alleges both Defendants violated bankruptcy law by disregarding his statement that he had filed bankruptcy and was entitled to protection from creditors. Id. at ¶ 11(b).

It is undisputed that C&C Towing has never done business with Emiabata and has no knowledge of the business transaction between Emiabata and Western Finance. (Doc. #19, Aff. Neal Clark, Jr. ¶¶ 4, 9). The lien holder of the truck hired C&C Towing to repossess the truck. Id. at ¶10. Following an altercation between C&C Towing, Emiabata, and Emiabata's wife, the Laurens County Sheriff's Department in Georgia directed C&C Towing to repossess the trailer in conjunction with the repossession of the truck. Id. at ¶¶ 12-13. Thus, C&C Towing, after

researching the lien holder of the trailer, contacted Western Finance to advise the trailer was located in C&C Towing's impound lot. Id. at ¶ 14. Western Finance then sent documentation to C&C Towing to complete repossession of the trailer.

Defendant C&C Towing moves to dismiss the claims against it for lack of personal jurisdiction. Emiabata asserts jurisdiction is proper because C&C Towing acted as "an agent" of Defendant Western Finance.

## ANALYSIS

**1.   Applicable Law**

Personal jurisdiction exists in this Court if (1) North Dakota's long-arm statute is satisfied, and (2) the exercise of personal jurisdiction over the defendant would not violate the due process clause of the Fourteenth Amendment. Drayton Enters., L.L.C. v. Dunker, 142 F.Supp.2d 1177, 1182 (D.N.D. 2001). North Dakota's long-arm statute allows courts to exercise personal jurisdiction to the fullest extent permitted by due process. Hebron Brick Co. v. Robinson Brick & Tile Co., 234 N.W.2d 250, 255 (N.D. 1975).

In order for a court to properly exercise personal jurisdiction over a nonresident defendant, due process requires that the defendant have "certain minimum contacts" with the court's forum state such that the exercise of jurisdiction over the defendant "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). In analyzing minimum contacts, the Supreme Court has said it is essential that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958) (citing Int'l Shoe Co., 326 U.S. at 319). This "purposeful availment" requirement

ensures a defendant will not be haled into a jurisdiction solely because of unilateral activity of a third person or as a result of random, fortuitous, or attenuated contacts. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (citations omitted). Additionally, a defendant's conduct and connection with the forum state should be such that one would "reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 562 (8th Cir. 2003).

The North Dakota Supreme Court has identified five factors a court should consider when analyzing whether there are sufficient minimum contacts with the forum state: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relationship of the cause of action to the contacts; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience or inconvenience of the parties. Ensign v. Bank of Baker, 676 N.W.2d 786, 790 (N.D. 2004). The third factor distinguishes whether the jurisdiction is general or specific. Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd., 89 F.3d 519, 523 n.4 (8th Cir. 1996).

A court obtains "general" jurisdiction when a defendant has continuous and systematic contacts with the forum state, even if the injury at issue did not arise out of the nonresident defendant's activities directed at the forum. Denver v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073 (8th Cir. 2004). In contrast, a court may exercise specific jurisdiction over a nonresident defendant who has purposefully directed activities at a forum resident in a suit that arises out of or relates to the defendant's activities. Lakin v. Prudential Sec., Inc., 348 F.3d 704, 707 (8th Cir. 2003) (quoting Burger King, 471 U.S. at 472).

When jurisdiction is challenged, the plaintiff bears the burden of showing that jurisdiction

4

exists. Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996). "To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant." Digi-Tel Holdings, Inc., 89 F.3d at 522 (citations omitted). In analyzing the prima facie showing, a court must view the evidence presented in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor. Id. Additionally, a plaintiff's "prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." Miller v. Nippon Carbon Co., Ltd., 528 F.3d 1087, 1090 (8th Cir. 2008) (quotation and citation omitted).

    **2.    Application of the Law**

        *a.    General Jurisdiction*

General jurisdiction over a defendant exists when the defendant has continuous and systematic contacts with the forum state. Denver, 380 F.3d at 1073. Applying the factors set out by the North Dakota Supreme Court in Ensign, the Court does not find sufficient contacts between C&C Towing and North Dakota to confer general jurisdiction.

Emiabata did not produce any evidence indicating C&C Towing has ever been to North Dakota or conducted any business in North Dakota. C&C Towing has no offices, inventory, bank accounts, real estate, personal property, employees, or agents in North Dakota. C&C Towing does not advertise in North Dakota or operate a website. Id. at ¶¶ 7-8. C&C Towing hauls vehicles exclusively within the State of Georgia. (Doc. #19, Aff. Neal Clark, Jr. ¶ 6).

The sole contact with the State of North Dakota alleged by Emiabata occurred when a C&C Towing employee contacted Western Finance, the lien holder of the trailer, to advise that the trailer had been repossessed along with the truck and was located in its impound lot (Doc. #19, Aff. Neal

Clark, Jr. ¶ 17). This single contact with Western Finance in North Dakota does not constitute continuous or systematic activities and is insufficient to confer general jurisdiction over C&C Towing. See Burlington Industries, Inc., 97 F.3d at 1103 (simple commercial contacts are insufficient to establish personal jurisdiction). Emiabata has failed to demonstrate continuous or systematic contacts by C&C Towing to justify the exercise of general jurisdiction.

    *b.*   *Specific Jurisdiction*

Turning to the question of specific jurisdiction, Emiabata must show C&C Towing purposefully directed its activities at North Dakota and the claim arose out of or relates to those activities. Steinbuch v. Cutler, 518 F.3d 580, 586 (8th Cir. 2008). Emiabata has produced no evidence that C&C Towing directed any business activities at North Dakota. The lien holder for the truck hired C&C Towing to repossess the truck. When Emiabata and his wife refused to cooperate with the repossession, C&C Towing contacted the Laurens County, Georgia Sheriff's Department for assistance and the Sheriff's Department instructed C&C Towing to take possession of both the truck and trailer. C&C Towing then contacted Western Finance, the lien holder of the trailer, to advise as to the whereabouts of the trailer. Consequently, Western Finance & Lease faxed the appropriate documentation to C&C Towing to complete the repossession of the trailer in Georgia.

C&C Towing has had no contact with Emiabata. C&C Towing does not conduct business in North Dakota. The contact C&C Towing had with Western Finance, who happens to be located in the State of North Dakota, occurred only because the lien holder of the truck hired C&C Towing to repossess the truck and law enforcement officers directed C&C Towing to take possession of the truck and trailer when the Emiabatas refused to cooperate with the truck repossession. C&C Towing's contacts with North Dakota can be equated to the "fortuitous circumstance" alluded to by

the United States Supreme Court in World-Wide Volkswagen Corp, 444 U.S. 286, and not the product of purposefully directed activities required to confer specific personal jurisdiction. To exercise jurisdiction over C&C Towing would offend against the traditional notions of justice and fair play under due process. See Hust v. Northern Log, Inc., 297 N.W.2d 429, 432-33 (N.D. 1980) (concluding exercise of jurisdiction over log company whose limited conduct of mailing a brochure displaying its product after customer's request and sending an agent to oversee construction of home in its initial stages would offend against the traditional notions of fair play and substantial justice).

## CONCLUSION

The Court has considered the nature of C&C Towing's contacts with North Dakota and finds C&C Towing has not had continuous and systematic contacts with the state and lacks sufficient minimum contacts such that this Court can properly exercise jurisdiction over it. Accordingly, Defendant C&C Towing's motion to dismiss for lack of personal jurisdiction is **GRANTED**. Plaintiff's Complaint against C&C Towing is hereby dismissed without prejudice.

**IT IS SO ORDERED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated this 28th day of September, 2010.

*/s/   Ralph R. Erickson*
Ralph R. Erickson, Chief Judge
United States District Court